## Case No. 5,271.

GATTMAN et al. v. HONEA.

[12 N. B. R. 493;[1] 7 Chi. Leg. News, 395.]

District Court, N. D. Mississippi. Aug., 1875.

CONTRACTS — ADVANCE AS PART CONSIDERATION— BANKRUPTCY—CONVEYANCE FOR PRESENT CONSIDERATION—BONA FIDES—FRAUD.

1. When an advance is made upon an agreement that certain and specific property shall be conveyed, and the conveyance is made within a reasonable time thereafter, the advance will be considered as a present consideration for the conveyance.

2. An insolvent debtor may, for a present and sufficient consideration, sell or encumber his estate, provided the transaction is bona fide, and free from fraud, or an intention to defeat the operation of the bankrupt law [14 Stat. 517].

3. To defeat a conveyance for a present consideration, the proof must show that the party to whom or for whose benefit it was made knew or had reasonable cause to believe the grantor insolvent, and knew that a fraud upon the law was intended.

4. The knowledge that a fraud was intended may be established by circumstantial evidence.

[This was a suit by Gattman & Co. against R. A. Honea, assignee of J. M. Smith, a bankrupt.]

HILL, District Judge. This cause is submitted upon bill, cross bill, answers, exhibits, and proofs, from which it appears that said Smith was regarded as a successful cotton-planter of Monroe county; that to enable him to supply his plantation and laborers for the year 1873, he obtained an advance in money from a firm of commission merchants in Mobile, for which he gave his note, with one Randall as surety, and also the guarantee of complainants, which note was paid off by Smith with the exception of some three hundred dollars; that in February, 1874, Smith applied to complainants to procure for him an advance of two thousand dollars to meet his demands and carry on his farming operations for 1874. An agreement was entered into between them, by which complainants were to procure the loan from McIntosh & Gillespie, commission merchants, of Mobile, or to make the loan themselves. Negotiations were entered into with McIntosh & Gillespie, but there being some supposed defect in the title to a portion of the land upon which the security was to be given, in May they declined to make the loan, when the agreement was made between complainants and Smith. It was agreed that complainants would make such small advances as Smith might need, to be refunded out of the sum to be received from McIntosh & Gillespie, should that loan be obtained; but should it fail, then the advances so made were to be included in a deed of trust to be executed, conveying all his real and personal estate, for the payment of two thousand dollars or more, agreed to be made on the 12th of June, after McIntosh & Gillespie had declined to make the loan. In pursuance of the original agreement, Smith executed to complainants his three several notes, one payable October 15, 1874, for one thousand and sixty dollars and two cents; one payable November 15, 1874, for three hundred and seventy-one dollars and seventy-seven cents; and one note for one thousand and eighty dollars and fifty-eight cents, payable November 15, 1874,—all of which to bear three per cent. per month interest after maturity. These notes included interest at ten per cent. to the maturity of the notes; also, two and a half per cent. for advancing. On the same day said Smith executed to Elkin, as trustee, a deed of trust conveying all of his estate, real and personal, to secure the payment of these notes, and also promising to ship to McIntosh & Gillespie, in the city of Mobile, two hundred bales of cotton, and in default to pay two dollars per bale for each bale not so shipped. On the —— day of ——, 1874, and before the maturity of these notes or the crop of cotton, proceedings were commenced in involuntary bankruptcy against said J. M. Smith, and on the —— day of ——, 1874, he was adjudicated a bankrupt, and said Honea appointed his assignee, to whom the estate was assigned by the usual deed of assignment. Honea took possession of the estate, and has sold said cotton crop, none of which, or any other cotton has been shipped by Honea or Smith, in fulfillment of their part of the agreement, nor has any part of the money due upon said notes been paid. The original bill seeks payment, out of the proceeds of the property sold and that so conveyed, of these notes, with interest; also, the sum of four hundred dollars, being two dollars per bale for the cotton not delivered.

The cross bill charges that the said Smith, at the time said conveyance was made, was insolvent and in contemplation of bankruptcy, and that complainants had reasonable cause to believe or know that fact, and knew, at the time, that said conveyance was in fraud of the bankrupt law; that a portion of the consideration of said notes was a pre-existing debt, and not for advances then and thereafter to be made, and that said conveyance was intended to give complainants a preference, and was in fraud of the bankrupt law, and void; all of which is denied by the answers to the cross bill.

The question to be determined is whether or not this conveyance is valid under the bankrupt law, as shown from the pleadings and proofs. The conveyance embraced all the property of the grantor, and stipulated for an unusual and ruinous rate of interest, which casts a suspicion upon the transaction, which it is incumbent upon the complainants to remove. They state in their answers, and prove by their own depositions and that of Smith, that when the agreement

[1] [Reprinted from 12 N. B. R. 493, by permission.]

was made, in February, there was only a small balance due from Smith to complainants, too inconsiderable to affect the bona fides of the transaction; and that it was then agreed that, for the small advances made after that time and before the conclusion of the loan, whether with McIntosh & Gillespie or complainants, security was to be given by a conveyance in trust of all Smith's property. If the loan was obtained from the Mobile merchants, then it was to be refunded out of the amount received; and if not, then it was to be included in and secured by a trust deed on all Smith's property. There is no evidence to controvert this statement, and hence it must be held as established.

The rule, as I understand it, is this: When advances are made upon a general promise afterwards to give a security by mortgage or other conveyance, specifying no particular property upon which it is to be given, the promise amounts to nothing, and, when given, the advances so made constitute an antecedent or pre-existing debt; but when an agreement is made that certain and specific property shall be conveyed, and the conveyance is made within a reasonable time thereafter, the advances will be considered as a present consideration for the conveyance. I am of the opinion that the facts proven bring the advances made after the agreement under this latter rule. The amount due to McIntosh & Gillespie was secured by Randall; hence there was no inducement to secure this debt. Besides, the testimony shows that the payment of this balance was after or at the time the conveyance was made, and out of the money loaned, so that, under the testimony and rules stated, I am satisfied that these advances cannot be held as a pre-existing debt.

The next inquiry is, was or was not this conveyance made in fraud of, or with intent to defeat the operation of the bankrupt law, and with a knowledge on the part of the Gattmans that such was the object and purpose? To render it so, the evidence must show that Smith was then insolvent, or contemplated insolvency or bankruptcy: this is the first point to be ascertained. I am satisfied, from the evidence, that Smith was, in point of fact, then insolvent, but that, in his hopefulness and with his idea of insolvency, he did not so consider himself; but had he believed himself insolvent, the proof must go further, and show that the conveyance was intended to defeat the operation of the bankrupt law, by preventing his property from being administered under the law, the question of preference, as already stated, being out of the way.

The rule is well settled that an insolvent debtor may, for a present and sufficient consideration, sell or encumber his estate for the purpose of paying his debts, or to enable him to carry on his business, provided the transaction is bona fide, and free from fraud or an intention to defeat the operation of the bankrupt law. To defeat the conveyance the proof must go further, and show that the party to whom, or for whose benefit the conveyance was made, at the time knew or had reasonable cause to believe the grantor insolvent, and under the law, as amended by the act of June 22, 1874 [18 Stat. 178], knew that a fraud upon the law was intended.

I uniformly held, under the law, before this amendment, that where the party for whose benefit the transfer was made had a knowledge of such facts as would put an ordinary prudent business man upon the inquiry, and which inquiry would have led him to a knowledge of the fact that the party was insolvent, and that a preference of fraud was intended, and he failed to make the inquiry, he must be held to a knowledge of that which it was his duty to know; and, further, that, as in all other cases, a party must be held to intend that which is the natural and inevitable result of his own acts. I am satisfied that this construction was correct, and applies to the act as amended, with this one exception, and that is, that the party to whom or for whose benefit the conveyance is made must not only have cause to believe, but must actually know, that a fraud upon the bankrupt law is intended, and, with that knowledge, participate in it by taking the conveyance. The law-makers certainly intended something by the change in substituting the word "knowing" for those of "having reasonable cause to believe." But this knowledge of the party may be established by circumstantial evidence, as may any other fact, even the commission of the highest crime known to the law; and this is especially so in cases of fraud, rarely established by positive testimony, the knowledge and motives of men usually being ascertained by their acts more than their words.

Without entering into comment upon the evidence, I am satisfied that the Gattmans were not in possession, at the time, of such circumstances as to cause them to believe Smith insolvent, and that they did not know that a fraud upon the bankrupt law was intended—at least, the proof does not establish such knowledge. The result is that this conveyance must be held valid, as a security for so much of the debts claimed as are supported by a legal and valid consideration, which, in the first place, includes the amount advanced, with ten per cent. interest from the time of the advancement to the maturity of the notes; also, two and a half per cent. for the advancement, and including also the small balance due when the agreement was first made, with ten per cent. interest. The three per cent. interest per month after maturity of the notes, whilst exorbitant and ruinous, was not at the time forbidden by the law, and, as part of the contract, must be allowed. It, however, serves to show the wisdom of the legislature in again providing

some protection to the unfortunate and oppressed debtor, against the never-to-be-satisfied demands of the money-lender.

I have not been referred to any authority, either in the text-books or adjudicated cases, binding upon this court, to sustain the charge of four hundred dollars for failing to ship to McIntosh & Gillespie the two hundred bales of cotton. The evidence shows no consideration which in my judgment will uphold this agreement, which is but an artifice, upon the part of the money-lenders and commission merchants, to absorb the honest earnings of the farmer and his no less dependent laborer, and is inequitable, unjust, and oppressive, to be maintained by a court of equity. Therefore, this claim must be disallowed. Not being sufficiently advised of the amount really due according to the rules above stated, the cause must be referred to the clerk, as master, to ascertain the amount, and report the same to the court for the further order in relation thereto.